UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANIELLE CLERMONT
        Plaintiff

V.

TOWN OF TISBURY, TISBURY SELECTMAN
JAMES ROGERS, CHIEF DANIEL HANAVAN,
JEREMIE ROGERS and Sgt. MAX SHERMAN
in their Official and Individual Capacities
        Defendants

## COMPLAINT

### INTRODUCTION

The Plaintiff, Danielle Clermont, brings this action seeking redress for substantial violations of her rights pursuant to the Federal Civil Rights Act, 42 U.S.C. § 1983, as well as under the Massachusetts Civil Rights Act. The Defendants, individually and collectively, while acting under the color of state law, have attempted to interfere with, and did interfere with, the Plaintiff's exercise and enjoyment of rights secured by the Constitution and laws of the United States and the Massachusetts Declaration of Rights, including, but not limited to, her right to seek gainful employment, the right to free speech, right to Procedural and Substantive Due Process and her right to continued employment.

The Defendants, individually and collectively, have also discriminated and retaliated against the Plaintiff based upon her gender and sexual identification in violation of M.G.L. c. 151B.

### JURISDICTION

Plaintiff asserts Federal jurisdiction under 28 U.S.C. § 1331, and pendent jurisdiction of her state law claims under 28 U.S.C. § 1367.

### PARTIES

1. The Plaintiff, Danielle Clermont, is an individual currently residing in Westwood, Norfolk County, the Commonwealth of Massachusetts.

2. Defendant Town of Tisbury, is a municipality duly incorporated under the laws of the Commonwealth of Massachusetts.

3. Defendant Board of Selectmen for the Town of Tisbury is the appointing authority for the Town of Tisbury.

4. The Defendant, Former Chief Daniel Hanavan (Hereinafter "Defendant Hanavan" or "Chief Hanavan"), was employed by the Tisbury Police Department.

5. The Defendant Max Sherman, (Hereinafter "Defendant Sherman") is employed by the Tisbury Police Department, and currently holds the rank of Sergeant.

6. The Defendant Jeremie Rogers, (Hereinafter "Defendant Rogers") was employed by the Tisbury Police Department.

7. The Defendant James Rogers, (Hereinafter "Defendant James Rogers") was at all relevant times a member of the Tisbury Board of Selectmen.

## ADMINISTRATIVE PREREQUISITES

8. The Plaintiff has previously filed a timely Charge of Discrimination at the Massachusetts Commission Against Discrimination, MCAD Docket Number charging the Defendants with substantial violations of Plaintiff's rights under the Massachusetts anti-discrimination laws, M.G.L. c. 151B.

9. The Charge of Discrimination was filed jointly with the Massachusetts Commission Against Discrimination and Equal Employment Opportunity Commission within the time required by Massachusetts General Laws Chapter 151B.

10. Plaintiff has withdrawn her Charge of Discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission.

## FACTS

11. The Plaintiff, Danielle Clermont (hereinafter "Plaintiff" or "Ms. Clermont") is 30 years old and identifies as a bisexual woman.

12. Ms. Clermont has always been interested in a career in law enforcement. In 2016, Ms. Clermont graduated summa cum laude from the University of Massachusetts, Boston.

13. Prior to her graduation from College, Ms. Clermont had previously interned at the Town of Tisbury Police Department (hereinafter "TPD") in the Autumn of 2015.

14. Ms. Clermont was also previously employed by the Dukes County House of Correction as a Correction Officer in October of 2016.

15. In late 2016, Ms. Clermont attended the Boston Police Academy. The Plaintiff was sponsored by the Tisbury Police Department and former Tisbury Police Chief Daniel Hanavan (hereinafter "Chief Hanavan").

16. The Plaintiff's sexual identity as a bi-sexual woman had not been disclosed to the Defendants at the time of her sponsorship to the Boston Police Academy.

17. Upon learning that Ms. Clermont wanted to enter the Boston Police Academy, Chief Hanavan asked the Plaintiff, "You know you are going to have to do pushups, right?"

18. Plaintiff understood this question to be directed at her based upon Chief Hanavan's belief that, as a woman, she was not strong enough to complete the physical challenges of the academy.

19. Although "sponsored" by the TPD, the Plaintiff personally paid for the costs associated with her police academy training.

20. As stated, at the time of the onset of her academy training, the Plaintiff's sexual identity was not public knowledge, nor known to the Defendants named above.

21. The Plaintiff excelled during her academy training program.

22. During the pendency of her Boston Police Academy training, Ms. Clermont began a dating relationship with her now life partner, Kindia Roman (hereinafter "Ms. Roman or Officer Roman"). Ms. Roman identifies as a gay, Hispanic woman.

23. At that time, Ms. Roman was employed by the Defendant Town of Tisbury as a Sergeant within the Tisbury Police Department.

24. As a result of Ms. Clermont's dating relationship with Sgt. Roman, the Plaintiff's sexual identity became well known within the Tisbury Police Department and the Town at large.

25. Ms. Clermont subsequently graduated from the Boston Police Academy in June 2017 as a squadron leader. She was ranked at the top of her police academy class both physically and academically.

26. Following her graduation from the Boston Police Academy, Ms. Clermont wore the Tisbury Police Department uniform to her graduation ceremony based upon her sponsorship by the Defendant Town of Tisbury and the intention to hire her as an officer. (Exhibit 1).

27. Based upon her previous internship at the TPD, as well as her academy success and the Plaintiff's sponsorship by Tisbury and Chief Hanavan, the Plaintiff applied for one of several open positions at the Tisbury Police Department.

28. Ms. Clermont was successful in her interview with the Tisbury hiring panel that had been created by the Defendants to objectively evaluate candidates for employment within the Department. The interview panel consisted of members of other law enforcement agencies and Defendant Hanavan.

29. Ms. Clermont was well received by all of the members of the interviewing panel who enthusiastically approved her selection for employment with the TPD.

30. It is important to note that all law enforcement agencies, including the TPD, run a thorough and complete background check on all candidates to be hired by the Department. This includes a Board of Probation "BOP" check, an NCIC criminal history review and CJIS inquiry.[1]

31. The Plaintiff openly advised the members of the interview panel, including Chief Hanavan of the facts surrounding her previous contempt of court incident.

32. The Plaintiff had also previously advised Chief Hanavan of the previous contempt of court incident prior to her initial internship.

33. After her interview with the Tisbury review panel, Chief Hanavan provided Ms. Clermont with an offer of employment with the Tisbury Police Department.

34. Chief Hanavan told the Plaintiff she was scheduled to be appointed by the Defendant Tisbury Board of Selectmen at their next weekly meeting.

35. Chief Hanavan wrote to the Plaintiff, *"You are on schedule for the selectmen's meeting on Tuesday, July 11, at 5 pm…The interview board recommended you be given a conditional offer of employment. You will need to have a physical and the psychological test. The select[men's] meeting will take place at the Tisbury Fire Station by the Tisbury School. The entrance to the large meeting room is in the backside of the building. You should be in business clothes as you were for the job interview."*

---

[1] Ms. Clermont had a prior CJIS criminal history entry in 2010, at the age of 19 for contempt of court.

36. Ms. Clermont notified her family and friends that she had received the offer of employment from the Defendant Town of Tisbury Police Department and that she had accepted their offer.

37. On the day of the scheduled Tisbury Board of Selectmen meeting, the meeting was suddenly canceled without justification and the Plaintiff's name was removed from the Defendant Board's agenda without explanation.

38. During that same day, the Plaintiff received a call from Chief Hanavan, notifying Plaintiff that her appointment to the position as a Tisbury police officer would not be happening and that the BOS meeting scheduled for that day had been canceled.

39. Chief Hanavan stated to the Plaintiff that a "negative" letter written about her had been delivered to the Board of Selectmen and that, as a consequence she would not be appointed as a police officer.

40. Plaintiff has subsequently learned that this "negative" letter was presented to the Board by current Selectmen Defendant James Rogers.

41. Selectmen James Rogers' son, former Tisbury Police Officer Jeremie Rogers, and Defendant Max Sherman (hereinafter "Sherman" or "Defendant Sherman") provided information and assisted in the draft of the "negative" letter which discredited Plaintiff's abilities as a police officer.

42. The Plaintiff avers that their actions were based upon and done as a result of the Defendants Sherman and Rogers' discriminatory animus toward Plaintiff and her life partner, Sergeant Kindia Roman.

43. The Plaintiff avers that Defendants Sherman and Jeremie Rogers held personal animosity and discriminatory bias against both the Plaintiff and Sgt. Roman as a consequence of their sexual identities.

44. Ms. Clermont was never provided with a copy of this so-called "negative" letter, nor was she ever informed if the letter was signed or submitted anonymously.

45. The Plaintiff was also never informed what the specific reason or basis was for the cancellation of the Board of Selectman's scheduled meeting or provided any manner of due process with the opportunity to challenge the Board's decision.

46. Chief Hanavan subsequently contacted the Plaintiff the following day and falsely told Ms. Clermont that there was now an unforeseen "hiring freeze" within the Town of Tisbury, despite the existence of several open positions for employment within the Department.

47. Despite the so-called "hiring freeze," several individuals who were male and not gay/bisexual were hired by the Tisbury Police Department shortly thereafter.

48. The Tisbury Board of Selectmen's decision to rescind the offer of employment to Ms. Clermont, based upon a so-called "hiring freeze," was in fact a pretext and done for the hidden purpose of discriminatory animus, bias, and retaliation on the part of Defendants Max Sherman and others within the Tisbury Police Department.

49. Defendant Max Sherman had previously been hired by the Defendant Town of Tisbury as a full-time police officer in 2015.

50. Ms. Clermont's life partner, Officer Kindia Roman, had previously joined the Tisbury Police Department in 2014 and subsequently became Defendant Max Sherman's direct supervisor.

51. Defendant Sherman attitude toward the Plaintiff's partner, Ms. Roman, was extremely hostile. Defendant Sherman frequently refused to follow or obey instructions given to him by Sgt. Roman and openly challenged her authority and rank over him.

52. Defendant Sherman's animosity toward gay females was palpable. Sherman openly referred to women in general, including Ms. Clermont, and her partner, Ms. Roman by use of the word "cunt" or "dyke." He did so while on duty and in the presence of other members of the Department.

53. As a consequence of Sherman's discriminatory actions, Ms. Roman filed a complaint against Sherman with the Town's attorney, who took no formal action.

54. However, in February 2018, the Defendant Town of Tisbury had issued a written "Discrimination Prevention Policy." Tisbury's Discrimination Prevention Policy prohibited, at a minimum, the following:

> *Prohibit any kind of discrimination based upon race, color, religion, national origin, ancestry, sex gender identity, age, handicap (disability), participation in complaint related activities, sexual orientation, genetics, or active military or veteran status or any other basis prohibited under applicable law.*

55. Sherman's animosity toward Ms. Roman was also directed toward her partner, the Plaintiff, Ms. Clermont.

56. In addition to her application for employment with the Tisbury Police, Ms. Clermont had also applied for a vacant position with the Westwood Police Department.

57. Ms. Clermont successfully interviewed with the Westwood Police Department and openly provided them with the same information she had given to the TPD interviewing panel regarding her previous contempt of court incident.

58. Ms. Clermont has subsequently determined that Defendant Sherman personally contacted Jeffrey Silva, the Westwood Chief of Police in an effort to prevent Ms. Clermont from being hired by the Westwood Police[2].

59. With regard to the call made about Ms. Clermont, Westwood Chief Silva recently, in December of 2020, stated,

    *"The caller at the time identified himself as a male police officer from the Tisbury Police Department and gave his name, although I don't recall his name now…He indicated he 'would hate to see any police department get stuck with a bad cop."*

    *"Once it became apparent to me that this caller was trying to character-assassinate a candidate by attempting to prejudice me as the person who would make the final decision to present a candidate for hire…I gave the caller the name and phone number of my background investigator. I told him that any information should be given to my detective, and that he would investigate the information and include it in his report to me if he found it to be verifiable, relevant, and material to the candidate's application. I then ended the call."*

60. Defendant Sherman went on to defame and slander Ms. Clermont, stating to Chief Silva that Ms. Clermont was unfit to be a police officer and that Ms. Clermont would tarnish the reputation of any police department who hired her.

61. Sherman's statements were untrue, malicious and based upon Ms. Clermont's gender and sexual orientation, as well as Sherman's personal animosity toward Sherman's then supervisor Mr. Roman, who was Ms. Clermont's life partner.

62. Based upon the information recently made available in the December 2020 MV Times article, Ms. Clermont avers that Defendant Sherman was the source of the information included in the "negative" letter written to the Tisbury Board of Selectmen.

63. Ms. Roman has previously filed an MCAD complaint against the Town of Tisbury and Defendant Max Sherman in November of 2018. (Docket No.: 18BEM03106)

---

[2] A recent investigative article written by the Martha Vineyard Times, "Whatever Happened to Danielle Clermont" was published on December 2, 2020. The article reveals that the identity of the then-anonymous caller to Westwood Police Chief Jeffrey Silva was Defendant Max Sherman. A copy of that MV Times article is attached hereto and incorporated for all purposes.

64. Ms. Roman has removed her MCAD complaint and currently has a pending federal lawsuit, filed on November 24, 2020 (Docket No.: 1:20-cv-12110-IT). Ms. Roman's complaint is attached hereto and names the same Defendants for their wrongful conduct toward Ms. Roman. Ms. Clermont hereby incorporates Ms. Roman's complaint by reference for all purposes. (Exhibit 3)

65. Many of the facts alleged in Ms. Roman's federal complaint are relevant and applicable to Ms. Clermont's complaint. The discriminatory actions taken by the Defendants Sherman and the Board of Selectmen against Ms. Roman are as follows:

66. In her federal complaint Ms. Roman alleged that Defendant Sherman, similar to the call made to Westwood Chief Silva about Plaintiff Clermont, had also personally contacted the Walpole Police Department in an effort to prevent Ms. Roman from being hired by that Police Department.

67. In May 2018, Ms. Roman applied for a police officer position with the Walpole Police Department ("Walpole PD"). Ms. Roman's decision was based in large part, upon the discriminatory actions of Sherman and others within the Department.

68. On June 13, 2018, Ms. Roman supplied the Tisbury Police Department with her two weeks' notice and letter of resignation.

69. Ms. Roman's final day at work for Tisbury was June 22, 2018. Chief Hanavan told Ms. Roman on that date that she was leaving in "Good Standing" and if she ever wanted to return there would always be a place for her at the Tisbury Police Department.

70. On June 25, 2018, Ms. Roman rented an apartment and moved to Norwood with her partner, Ms. Clermont. Ms. Roman was scheduled to begin her new job with the Walpole Police Department.

71. Shortly thereafter, Ms. Roman received notification that the Walpole Police Department unexpectedly wanted to conduct a second interview of her. During the second interview, Ms. Roman was asked about the Plaintiff's background and questioned Ms. Roman's personal relationship with the Plaintiff.

72. Days later, Ms. Roman was informed that she was no longer being offered the job with the Walpole Police Department.

73. Defendant Sherman subsequently openly bragged to other members of the Department that he had successfully "torpedoed" Ms. Roman's Walpole's application for employment.

74. Ms. Clermont alleges that Defendant Max Sherman deliberately and maliciously interfered with Ms. Roman's application for employment with Walpole in the same manner he had

done with Ms. Clermont's attempts to seek employment with the Tisbury and Westwood Police Departments.

75. After learning that Walpole Police had rescinded its offer of employment, Ms. Roman attempted to return to work as a Tisbury Police officer.

76. On July 24, 2018, Ms. Roman attended a Tisbury BOS meeting. Ms. Roman was on the Board of Selectmen's agenda to be reinstated as either a full-time or Special Officer.

77. Subsequently, Ms. Roman, like Ms. Clermont, was told by Chief Hanavan that the Board of Selectmen had imposed another "hiring freeze" and that the Board of Selectmen would not be reinstating Ms. Roman even though there were multiple posted vacancies for police officer.

78. As stated, Defendant Sherman openly bragged to other members of the TPD that he had "torpedoed" Ms. Roman's attempts to seek employment with the Walpole Police Department.

79. Defendant Sherman was subsequently investigated by the TPD in August of 2018 and found to have purposefully contacted the Walpole Police in an effort to interfere with Ms. Roman's application for employment with that Department.

80. Significantly, neither the Defendant Town of Tisbury, its Board of Selectmen nor the current Chief of Police ever imposed any disciplinary sanctions on Defendant Sherman for his misconduct towards Ms. Roman.

81. Although the Defendant Town of Tisbury and their Board of Selectmen became aware of the recent MV Times article published in December of 2020, no internal affairs investigation was conducted of Defendant Sherman for his actions in contacting Westwood Police Chief Silva or his role in the authoring of the so-called "negative" letter purportedly used by the Tisbury Board of Selectmen to justify their rescission of their offer of employment to Ms. Clermont.

82. Based upon the disclosures made in the recent Martha's Vineyard Times article, Counsel has filed a FOIA request for the Defendant Board of Selectmen to produce a copy of the "negative" letter leading to their failure to hire Ms. Clermont.

83. As previously stated, Ms. Clermont was never provided with a copy of the letter or its contents.

84. Ms. Clermont avers that Defendant Sherman conspired with other members of the Tisbury Police Department to provide this letter in a thinly veiled attempt to discriminate against Ms.

Clermont based upon her gender and sexual orientation and sabotage Ms. Clermont's opportunity to become a Tisbury Police Officer.

85. Ms. Clermont finished first out of the five applicants for the Westwood position and was eventually hired on September 18, 2017, by the Westwood Police Department. Her employment at Westwood is at a significantly lower pay scale than that of a comparable Tisbury Police Officer salary.

86. At this juncture, recent events and disclosures have demonstrated that the Defendants Town of Tisbury, the Tisbury Board of Selectmen and officer Max Sherman have wrongfully interfered with Ms. Clermont's rights to seek employment with the Tisbury Police Department, as well as the Town of Westwood, and discriminated against the Plaintiff due to her status as a bisexual female.

87. It was not until December 2, 2020, as a result of the attached article published by the Martha's Vineyard Times newspaper, that Plaintiff learned of the discriminatory animus and motivation behind the so-called "negative" letter sent to the Tisbury Board of Selectmen. (Exhibit 2)

88. The MV Times article also disclosed for the first time that the Board of Selectmen's agenda minutes which been manipulated and amended by the Defendants in an effort to cover up the discriminatory motive behind their decision.

89. Defendant Sherman, as well as other members of the Department, have wrongfully interfered with Ms. Clermont attempts to be hired by the Tisbury Police Department based upon her gender and sexual orientation and his efforts to retaliate against the Plaintiff.

90. Defendant Sherman's animosity toward gay and/or bisexual women was the true underlying reason and motive for providing the information contained in the so-called "negative" letter to the Defendant Board of Selectmen.

91. The discovery and disclosure of Ms. Clermont's (and her partner, Ms. Roman's) sexual identity was a substantial motivating cause of the Defendant's decision to not hire Plaintiff as a Tisbury police officer.

92. The acts set forth above demonstrate a pattern and practice of discriminatory treatment directed towards Plaintiff based upon her gender and sexual orientation. Plaintiff's superiors, peers and Town employees were either the ones engaging in this discriminatory treatment, or they knew of the treatment and took no actions to stop it, investigate it or rectify it.

93. Plaintiff alleges that all of the disparate treatment she has suffered due to her gender and sexual orientation as alleged in this Complaint is part of a continuing violation of the laws prohibiting discrimination against Plaintiff due to her gender and sexual orientation.

## COUNT I
## VIOLATION OF CIVIL RIGHTS 42 U.S.C., §1983
(Against all Defendants)

94. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

95. Defendants Town of Tisbury, Defendant Max Sherman, Defendant Chief Hanavan, Defendant Jeremie Rogers and Defendant James Rogers, in their official and individual capacities, and under color of law, attempted to interfere with, and did interfere with the Plaintiffs' exercise and enjoyment of rights secured by the Constitution and laws of the United States and the Massachusetts Declaration of Rights, including, but not limited to, her right to free speech, right to Procedural and Substantive Due Process, her right to seek and gain continued employment and the right to participate in and petition and seek redress from Governmental abuse without retaliation.

96. The Plaintiff has suffered significant damages, including loss of employment opportunities; lost wages, benefits and other economic damages; costs and attorney's fees required to remedy the legal wrongs done to her; damages to her personal and professional reputation; and emotional distress.

97. The Plaintiff is also entitled to punitive damages because the Defendants acted with evil motive or intent, recklessly or with callous indifference to Plaintiff's federally and state protected rights.

## COUNT II
## DISCRIMINATION BASED ON GENDER AND SEXUAL ORIENTATION

98. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

99. The conduct, acts and omissions of defendant as described herein constitutes discrimination based on sex/gender/sexual orientation, in violation of 42 U.S.C. §2000e-16; 2000e-2(a).

100. It is unlawful under Title VII of the Civil Rights Act of 1964, for any covered employer to refuse to hire, to discharge, or to otherwise discriminate against any person regarding promotions, demotions, compensation or other terms and conditions of employment because of said person's race, color, religion, sex or national origin, or to retaliate against any person because they assert, or attempt to assert, Title VII rights.

101. By the above-described conduct, Defendants has discriminated against the Plaintiff, because of her sex and sexual orientation in the terms, conditions, and privileges of her employment, in violation of Title VII, 42 U.S.C. § 2000e-(5).

102. Plaintiff is also proceeding under Title VII's "mixed-motives" test of liability. Plaintiff alleges that gender and sexual orientation were "a motivating factor(s)" in the discriminatory and adverse employment actions taken against her as described herein. 42 U.S.C.A. § 2000e-

2(m).

103. By the above-described conduct, Defendants has discriminated against the Plaintiff, and her sex/gender/sexual orientation were a motivating factor in the terms, conditions, and privileges of her employment, in violation of 42 U.S.C. § 2000e-2(m) ("…An unlawful employment practice is established when the complaining party demonstrates that... sex... was a motivating factor for any employment practice, even though other factors also motivated the practice.")

104. The unlawful discrimination on the basis of gender and sexual orienation, unequal and disparate treatment, oppressive acts and omissions engaged in by Defendants as set forth herein have caused, and are causing and will continue causing injuries and damages to Plaintiff.

105. All of aforementioned acts violate the rights guaranteed to the Plaintiff under the Constitution and laws of the United States of America. As such, Defendants are responsible to Plaintiffs for back pay, future pay, loss of leave, overtime, medical expenses and other benefits lost and as described above.

## COUNT III
## SEX DISCRIMINATION
(Violation of M.G.L. c. 151B)

106. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

107. The Defendants, separate and collective conduct represents, inter alia, intentional discrimination on the basis of sexual identity and/or gender bias in violation of M.G.L. c. 151B, s. 4(1).

108. The Plaintiff has suffered significant damages, including loss of employment opportunities; lost wages, benefits and other economic damages; costs and attorney's fees required to remedy the legal wrongs done to her; damages to her personal and professional reputation; and emotional distress.

## COUNT IV
## RETALIATION
(Violation of M.G.L. c. 151B)

109. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

110. The Defendants' conduct represents retaliation in violation of M.G.L. c. 151B, s. 4(4).

111. The Plaintiff has suffered significant damages, including loss of employment opportunities; lost wages, benefits and other economic damages; costs and attorney's fees required to remedy the legal wrongs done to her; damages to her personal and professional reputation; and emotional distress.

## COUNT V
## SEXUAL ORIENTATION DISCRIMINATION
(Violation of M.G.L. c. 151B)

112. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

113. The Defendants' conduct represents, inter alia, intentional discrimination on the basis of sexual orientation.

114. The Plaintiff has suffered significant damages, including loss of employment opportunities; lost wages, benefits and other economic damages; costs and attorney's fees required to remedy the legal wrongs done to her; damages to her personal and professional reputation; and emotional distress.

## COUNT VI
## AIDING AND ABETTING
(Violation of M.G.L. c. 151B)
(Against Defendants Max Sherman, James Rogers and Jeremie Rogers only)

115. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

116. Defendants Sherman, Rogers and Rogers aided and abetted the Town in such discrimination and unlawfully interfered with Plaintiff's rights in violation of M.G.L. c. 151B, s. 4(4A) and 4(5).

## COUNT VII
## INTERFERENCE, COERCION, OR INTIMIDATION
(Violation of M.G.L. c. 151B)
(Against all Defendants)

117. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

118. Defendants intimidated and interfered with Plaintiff because she exercised her rights or because she aided or encouraged others to exercise their rights granted or protected by M.G.L. c. 151B.

119. Defendants' conduct represents, inter alia, intimidation and interference in violation of M.G.L. c. 151B, s.4(4A).

## COUNT VIII
## MASSACHUSETTS CIVIL RIGHTS (M.G.L. ch. 12, §§ 11H, I)
(Against all Defendants)

120. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

121. The Defendants, in their official and individual capacity, attempted to interfere with, and did interfere with Plaintiff's exercise and enjoyment of rights secured by the Constitution and laws of the United States, and the Constitution and laws of the Commonwealth of Massachusetts, by threats, intimidation and coercion, including the Plaintiff's right to free speech, her right to seek, and of continued employment and right to participate in the Due Process of law.

122. The Defendants attempted to and did interfere with the Plaintiff's above stated rights by means of threats of discipline, economic coercion and retaliatory intimidation in an attempt to silence the Plaintiff's rights of free speech, her right to seek gainful employment, her rights of continued employment and her right to participate in the Due Process of law without interference or retaliation.

WHEREFORE, Plaintiff demands judgment against the Defendants on Count VII, plus interest and costs of this action, and reasonable attorneys' fees as provided under M.G.L. c. 12, Section 11I.

## COUNT IX
## DEPRAVATION OF CIVIL RIGHTS - FAILURE TO SUPERVISE (42 U.S.C. § 1983)
(Against Town of Tisbury and Defendant Daniel Hanavan, in his official and individual capacities)

123. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

124. The Town of Tisbury and Defendant Hanavan failed to properly supervise Defendant Sherman and Rogers and encouraged or knowingly acquiesced in their conduct as described herein.

125. A direct link exists between the Town of Tisbury's failure to supervise and/or intervene in the actions of Defendant Sherman and Rogers, and as a result of the depravation of her civil rights Plaintiff has suffered a loss of wages, benefits, reputation and earning capacity as well as suffering emotional and physical pain and distress and has incurred legal costs. All such damages continue to this date.

## COUNT X
## INTENTIONAL, IMPROPER INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP

(Against Defendant Max Sherman, Defendant James Rogers and Defendant Jeremie Rogers, in their official and individual capacities.)

126. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

127. As stated more particularly above, the Defendants acted with malice and in bad-faith in intentionally interfering with Plaintiff's employment relationship with the Town of Tisbury causing the loss of her job and job offer respectively.

128. The Defendants' conduct, as more particularly described above, has damaged Ms. Clermont.

129. The Defendants are liable to Plaintiff for the violations of law set forth above.

## COUNT XI
## CONSPIRACY
(Against Defendant Max Sherman, Defendant James Rogers and Defendant Jeremie Rogers, in their official and individual capacities.)

130. Plaintiff hereby incorporates each and every allegation in the preceding paragraphs of this Complaint as if set forth in full herein.

131. As a result of the Defendants' actions in conspiracy, under color of law and otherwise, the Plaintiff's rights were interfered with, attempted to be interfered with, and that interference or attempted interference was by threats, intimidation or coercion and the Plaintiff was deprived of a property interest in public employment.

132. As a result of this intentional, willful, knowing, malicious and purposeful conspiracy the Plaintiff suffered the deprivation of her rights and a loss of public employment, wages and benefits, was forced to suffer great strain, hardship, and anxiety, was caused painful physical and mental suffering, and was subjected to humiliation.

THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL COUNTS.

Respectfully submitted,
For Plaintiff,
By her attorney,

*/s/ Timothy M. Burke*
Timothy M. Burke, BBO #065720
117 Kendrick Street, Suite 300
Needham, MA 02494-2300
(781) 455-0707

**CERTIFICATE OF SERVICE**

       I hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this date.  Paper copies will be mailed to those listed as non-participants on the ECF system.


Dated:  07/29/2021　　　　　　　　　　　　*/s/ Timothy M. Burke*